Susan **OSTRANDER**, Appellant–Plaintiff,

v.

**BOARD OF DIRECTORS OF PORTER COUNTY EDUCATION INTERLOCAL,** Appellee–Defendant.

No. 46A05–9403–CV–92.

Court of Appeals of Indiana, Fifth District.

May 30, 1995.

Rehearing Denied Aug. 23, 1995.

Richard J. Darko, J. Michael Cavosie, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Briane M. House, Eric D. Johnson, Kightlinger & Gray, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

At issue here is whether teacher Susan Ostrander was entitled to additional due process protections prior to the non-renewal of her teaching contract. We find that she was not so entitled and affirm the decision of the trial court granting summary judgment in favor of the Board of Directors of Porter County Education Interlocal (School Corporation).

### FACTS

Susan Ostrander's teaching contract was not renewed by the School Corporation for the 1991–92 school year. In response, Ostrander filed a Complaint in Porter Circuit Court (later venued to LaPorte Circuit Court) alleging the non-renewal of her contract was arbitrary and capricious and violated a collective bargaining agreement and statutory due process requirements. The Honorable Robert S. Gettinger of the LaPorte Circuit Court, in general judgment terms, granted summary judgment in favor of the School Corporation. Ostrander appeals, stating the issue for review as:

> Whether Plaintiff is entitled to summary judgment when she taught under contract for three successive years and yet was neither afforded due process procedures contained in a collective bargaining agreement nor provided statutory due process hearing before her teaching contract was canceled.

We heard oral argument in this case on April 26, 1995.

Three arguments are presented, one a matter of statutory construction, one a matter of contract interpretation, and one a matter of constitutional due process. All deal with the School Corporation's failure to provide Ostrander with certain due process procedures to which she contends she was entitled. The facts are not in dispute as to the procedures provided. The dispute centers on whether Ostrander was entitled to additional protections.

### STATUTORY CONSTRUCTION

Ostrander contends that she was a semi-permanent teacher. If she was a semi-permanent teacher, she did not receive the due process protections to which she was entitled, specifically a hearing and an opportunity to be heard and present witnesses.

School Corporation contends Ostrander was a non-permanent teacher. Both parties agree that if Ostrander's status was that of non-permanent, she received all the due process protection to which she was entitled.

The Teacher Tenure Act, Ind.Code § 20–6.1–4, et seq. (the "Act") establishes a hierarchial structure of teacher classification for tenure purposes: non-permanent, semi-permanent and permanent. This structure determines the level of due process which must be provided a teacher. Non-permanent teachers are entitled to minimal due process protections. Semi-permanent and permanent teachers are entitled to comprehensive due process protections. The status of a teacher is determined by the successive years a teacher has served under contract with a public school corporation.

> A permanent teacher is one who:
>
> (1) serves under contract as a teacher in a public school corporation for five (5) or more successive years; and
>
> (2) at any time enters into a teacher's contract for further service with that school corporation ...

Indiana Code 20–6.1–4–9.

> A semi-permanent teacher is one who:
>
> (1) serves under contract as a teacher in a public school corporation for two (2) successive years;
>
> (2) at any time thereafter enters into a teacher's contract for further service with that school corporation; and
>
> (3) is not a permanent teacher, as defined in IC 20–6.1–4–9 ...

Indiana Code 20–6.1–4–9.5. Teachers with service less than that enumerated above are non-permanent teachers.

We need look no further than the provisions listed above to resolve Ostrander's teacher status under the Act. Ostrander and the School Corporation commenced their re-

lationship when they entered into, in August of 1988, a Teacher's Temporary Contract effective for the first semester of the 1988–1989 school year. Another Teacher's Temporary Contract, effective for the second semester of the 1988–1989 school year, was executed by Ostrander and the School Corporation in February of 1989. Ostrander was next employed by the School Corporation during the second semester of the 1989–90 school year, under a Regular Teacher's Contract executed by the parties in February of 1990. For the 1990–91 school year, the parties once again entered into a Regular Teacher's Contract, executed in February of 1991 for the entire school year.

1988–89 School Year:
Fall of 1988 — Temporary Contract
Spring of 1989 — Temporary Contract

1989–90 School Year:
Fall of 1989 — No Contract—Did Not Teach
Spring of 1990 — Regular Contract

1990–91 School Year:
Fall of 1990 — Regular Contract
Spring of 1990 — Regular Contract

■ A teacher is non-permanent if the teacher has taught for less than two successive years. A teacher is semi-permanent if the teacher has taught under contract for two successive years and has entered into a new contract. Ostrander did not teach during the fall semester of 1989. Thus, at the time of her contract non-renewal, she had not taught for two successive years and was not a semi-permanent teacher.

■ Ostrander contend that this issue was waived by the School Corporation's failure to argue it on appeal. However, when reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Huff v. Langman* (1995), Ind. App., 646 N.E.2d 730. We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C). School Corporation designated its Brief in Support of Cross–Motion for Summary Judgment on the issue of whether Ostrander was a semi-permanent teacher. In that brief, the arguments raised that Ostran-

der had not taught for two successive years. Thus, the issue, having been raised in the proceeding before the trial court and properly designated, is available to us on review.

Ostrander also argues that such a construction is in conflict with the case of *Sherrod v. Lawrenceburg School City* (1938), 213 Ind. 392, 12 N.E.2d 944. In *Sherrod,* teacher had a contract obligating her to teach art on twelve days in each month and had served the school under substantially similar contracts for more than six years. When the school arbitrarily lowered her salary the question arose whether she was a permanent teacher. Our supreme court held that the teacher tenure act in effect at that time did not require that a teacher teach every day or every hour of every day. The court held that the statute required:

[T]hat all teachers' contracts shall be in writing, shall state the date of the beginning of the school term, the number of months in the term, the total amount of the salary to be paid during the school year, [and] the number of payments that shall be made during the school year ...

*Id.* 12 N.E.2d at 945. The act also provided that "a month shall mean not more than twenty [20] school days". *Id.* The court noted that the contract complied with the act in every way except that the number of teaching days required was less than the norm. Recognizing that a school district could conceivably design a curriculum which required no teacher's services for more than twelve days a month, the court held that nothing in the statute prevented Sherrod from acquiring tenure status.

■ *Sherrod* is distinguishable from the instant case because it addressed the issue of variable days of service during the school year as opposed to teaching for only one semester during the school year. Nothing in *Sherrod* indicates that the statutory requirement of successive years of service is not broken by being unemployed by the School Corporation for one semester. The Act today provides extensive methods through which a teacher may take leave from a position and still preserve tenure rights. Ostrander, however, did not take a leave. She

simply was not employed by the School Corporation during the fall semester of 1989. Thus, at the time her contract was non-renewed, she had only served under contract for one and one-half successive years, which was insufficient to raise her status to that of a semi-permanent teacher.[1]

Because Ostrander had not taught for the School Corporation for two successive years, she did not attain the status of a semi-permanent teacher. Thus, under the Act, Ostrander received all of the due process protections to which she was entitled.

### THE COLLECTIVE BARGAINING AGREEMENT

Ostrander alleges that under the collective bargaining agreement between the teacher's union and the School Corporation, she was a semi-permanent teacher, was entitled to due process protections guaranteed to semi-permanent teachers by the contract, and that failure to provide her with those additional protections amounted to a breach of the collective bargaining agreement.[2] Specifically, Ostrander contends that prior to non-renewal of her contract, the School Corporation was required to give her effectiveness reports and an opportunity to correct any perceived deficiencies in her teaching performance.

The interpretation and construction of contract provisions is a function for the courts. On appeal, our standard of review is essentially the same as that employed by the trial court. Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *State Sec. Ins. Co. v. Ottinger* (1985), Ind.App., 487 N.E.2d 446, 447. The terms of a contract are not ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. *Eckart v. Davis* (1994), Ind.App., 631 N.E.2d 494. Where the terms of a contract are clear and unambiguous, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Jackson v. DeFabis* (1990), Ind.App., 553 N.E.2d 1212, 1215. We find that the agreement is clear and unambiguous and does not support Ostrander's contention that she was entitled to receive effectiveness reports prior to non-renewal of her contract. Consequently, the School Corporation did not breach the collective bargaining agreement.

The disputed provisions of the agreement are contained in Article V, entitled "Appraisal Procedure." Article V has three subheadings,[3] entitled "A", "B" and "C". Subheadings "A" and "B" are not bro-

---

1. We acknowledge that the two attorney general opinions cited by Ostrander advise to the contrary. 1948 *Op.Atty.Gen.* 261; 1947 *Op.Atty.Gen.* 283. While the construction given a statute by the attorney general is entitled to respect when it has been acquiesced in by the legislature for a number of years, it is nevertheless not binding on this court. *Illinois–Indiana Cable Television Ass'n, Inc. v. Public Service Commission of State of Indiana* (1981), Ind.App., 427 N.E.2d 1100. Because we believe the attorney general opinions cited erroneously interpret the statute, we afford them no weight.

2. The School Corporation contends that this issue was waived by Ostrander's failure to present it at the trial level. While it is true that Ostrander did not specifically use the term "breach of contract" in arguing against the grant of summary judgment, the issue of whether School Corporation violated the terms of the collective bargaining agreement was fully litigated at the trial court level, because it was integral to Ostrander's contention that she had a protectable property

interest in continued employment. Thus, because the issue was understood to be an issue, fully litigated, defended against, and briefed, we will not find waiver due to Ostrander's lack of specificity.

3. Article V

A. xxxxxxxxxxxxxx
B. xxxxxxxxxxxxxx
C. xxxxxxxxxxxxxx
 1. xxxxxxxxxxxxxx
 a. xxxxxxxxxxxxxxxxxx
 b. xxxxxxxxxxxxxxxxxx
 (1) xxxxxxxxxxxxxxxxxxxxx (altered
 (2) xxxxxxxxxxxxxxxxxxxxx definition)
 c. xxxxxxxxxxxxxxxxxx
 d. xxxxxxxxxxxx through k. xxxxxxxxx
 2. xxxxxxxxxxxxxx
 a. xxxxxxxxxxxxxxxxxx
 b. xxxxxxxxxxxxxxxxxx
 c. xxxxxxxxxxxxxxxxxx
 3. xxxxxxxxxxxxxxxxxx (effectiveness reports)
 a. xxxxxxxxxxxxxxxxxx
 b. xxxxxxxxxxxx through q. xxxxxxxxx

ken down further. Subheading "C" has three additional subheadings, entitled "1", "2" and "3". Each of those subheadings is broken down further, using lower case letters. Lower case letter "b" of subheading 1 is further broken down into two subheadings, captioned (1) and (2). It is that portion of the agreement, Art. V(C)(1)(b)(1) and (2), which Ostrander contends makes her a semi-permanent teacher for effectiveness reports purposes. It provides:

> b. All nonpermanent and semi-permanent teachers shall receive an appraisal on or before December 31st of each calendar year.
>
> > (1) For purposes of this section, a nonpermanent teacher is defined as a teacher who has less than two (2) years teaching experience in the Special Education Division.
> >
> > (2) For the purposes of this section a semi-permanent teacher is a teacher who has been employed between two (2) and five (5) years as a teacher in the Special Education Division.

Nonpermanent, semi-permanent and permanent are terms of art in the teaching profession and are understood to refer to the statutory definitions of those terms in the teacher tenure act. Thus, when used in the collective bargaining agreement, the statutory definitions of nonpermanent, semi-permanent and permanent apply unless specifically modified as is done above.

While Ostrander had not taught for two successive years, she had taught between two and five years, so fit the altered definition of semi-permanent appearing in Art. V(C)(1)(b)(2). Ostrander received the appraisal reports required by this section. However, she argues that this definition of semi-permanent teacher carries over to Art. V(C)(3)(a-q) of the agreement, which requires effectiveness reports be given to semi-permanent and permanent teachers with major deficiencies in their teaching performance and that the teachers be given opportunities to correct the deficiencies prior to non-renewal of their contracts. Given the construction of the agreement, we do not find that the "for purposes of this section" language of Art. V(C)(1)(b)(1) and (2) applies to any part

of the agreement other than Art. V(C)(1)(b). Had the definition been intended to apply to all of Art. V(C)(1), the definition would have preceded the lower case letter subheadings. Had it been intended to apply to all of Art. V(C), it would have preceded the number subheadings. While Art. V(C)(1)(b) clearly alters the statutory definition of semi-permanent teacher, the structure of the contract contradicts Ostrander's argument that the altered definition attaches to the effectiveness report requirement found later in the agreement. Ostrander was a non-permanent teacher for purposes of the effectiveness report section of the agreement and it therefore did not apply to her. Consequently, her contention that the School Corporation breached the agreement by not following the procedures is without merit.

## SECTION 1983

Ostrander's final contention is that because she had an expectation of continued employment by contract and implication, the School Corporation violated 42 U.S.C. § 1983 by non-renewing her contract without providing her with notice and a hearing. There is a line of cases holding that any understanding that employment will continue unless "cause" for termination exists creates a constitutionally protected right under the Fourteenth Amendment and 42 U.S.C. § 1983. *Perry v. Sindermann* (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Notice and hearing are the recognized due process protections. *Gary Teachers Union Local No. 4 v. School City of Gary* (1975), 165 Ind.App. 314, 332 N.E.2d 256. Our resolution of the first two issues negates Ostrander's contention that she had a valid expectation of continued employment.

The grant of summary judgment in favor of the School Corporation is AFFIRMED.

RUCKER and DARDEN, JJ., concur.