**CRAWFORD COUNTY COMMUNITY SCHOOL CORPORATION, Appellant–Defendant,**

v.

**Terry ENLOW, Appellee–Plaintiff.**

**No. 13A01–9911–CV–378.**

Court of Appeals of Indiana.

Sept. 7, 2000.

Jennifer A. Tucker, Tucker & Tucker, Paoli, Indiana, Attorney for Appellant.

Craig M. McKee, Wilkinson Goeller Modesitt Wilkinson & Drummy, Terre Haute, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Crawford County Community School Corporation ("Crawford County") appeals the trial court's entry of summary judgment in favor of Terry Enlow. Crawford County raises three issues, which we restate as:

(1) whether the trial court erred in determining that Enlow is entitled to severance pay;

(2) whether the trial court erred in awarding prejudgment interest to Enlow; and

(3) whether the trial court erred in ordering Crawford County to pay insurance premiums on behalf of Enlow.

We affirm in part, reverse in part, and remand.

The facts most favorable to the judgment follow. Enlow was an elementary principal for Crawford County. Enlow's employment relationship with Crawford County was memorialized in two separate contracts. He had an individual addendum contract (essentially, a principal's contract) for the period July 1, 1997, through June 30, 1999. Enlow also was covered by the terms of a collective bargaining agreement entered into between Crawford County and the Crawford Classroom Teachers Association.

After twenty-three years of employment with the school district, Enlow gave written notice to Crawford County on August 19, 1997, of his "intention to retire" effective October 20, 1997. Record, p. 514. In his letter, Enlow referenced his individual addendum contract and Article X of the 1993–1997 collective bargaining agreement in order to seek certain severance pay benefits to which he claimed entitlement. The letter also indicated that Enlow wished to remain on Crawford County's group life insurance plan but that his "group health insurance plan will be transferred into Marilyn Enlow's name." Record, p. 514. When Crawford County's Board of Trustees met on October 13, 1997, it voted to treat Enlow's letter as a request for resignation so that he could "accept a position as Superintendent of the Orleans Community School Corporation." Record, p. 10. As such, the Board of Trustees voted not to pay Enlow any retirement benefits.

On February 19, 1998, after Crawford County continued to refuse to pay Enlow any severance or other retirement bene-

fits, Enlow filed a complaint in the Crawford Circuit Court seeking severance pay, prejudgment interest plus costs, and participation in Crawford County's insurance programs as outlined in the two employment contracts. The trial court granted summary judgment in favor of Enlow on October 1, 1999, and ordered Crawford County to pay Enlow $57,473.05 plus costs of the action. The trial court further ordered Crawford County to pay Enlow's insurance premiums as described in the 1993–1997 collective bargaining agreement as well as to pay pre-judgment interest from October 21, 1997, to the date of judgment.

 When reviewing the propriety of a ruling on a summary judgment, we apply the same standard as the trial court. *Wabash Grain, Inc. v. Bank One*, 713 N.E.2d 323, 325 (Ind.Ct.App.1999). Thus, summary judgment should be granted only when the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Id.* Once the movant meets these requirements, the burden then shifts to the nonmoving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.* Where, as here, the trial court enters specific findings of fact and conclusions of law, they do not bind us but merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* The trial court's ruling on a motion for summary judgment may be affirmed on any theory supported by the evidence of record. *Id.*

### I.

The first issue is whether the trial court erred in determining that Enlow is entitled to severance pay. Crawford County argues that Enlow is not entitled to sever-

ance pay because he did not "retire;" rather, he resigned to accept a position as Superintendent of another school corporation. In support of its position, Crawford County makes three arguments: (1) the collective bargaining agreement(s) do not entitle Enlow to receive severance pay; (2) in taking its official action, the Crawford County Board of Trustees did not accept Enlow's "offer" of retirement and instead made a "counteroffer" that he resign without the payment of retirement benefits, which Enlow accepted by leaving its employ; and (3) Enlow's resignation was in violation of Ind.Code § 20–6.1–4–13. We will address each contention in turn.

### A.

 Crawford County first argues that the collective bargaining agreement(s) do not entitle Enlow to receive severance pay. When Enlow tendered his notice of retirement on August 19, 1997, the 1993–1997 collective bargaining agreement had expired but no new agreement had been reached. The new collective bargaining agreement, which we will refer to as the 1997–2001 agreement, was signed on November 7, 1997, but was made effective retroactively to August 1, 1997. Thus, the 1997–2001 collective bargaining agreement was signed after Enlow left the employ of Crawford County but was made effective retroactively prior to Enlow's notice of retirement. Therefore, the threshold issue is which collective bargaining agreement governs the dispute in this case.

Pursuant to Ind.Code § 20–7.5–1–12(e):

If no agreement has been reached on the items to be bargained collectively ... the parties shall continue the status quo and the employer may issue tentative individual contracts and prepare its budget based thereon. During this status quo period in order to permit the successful resolution of the dispute, the employer may not unilaterally change the terms or conditions of employment that are issues in dispute....

I.C. § 20–7.5–1–12. Both parties agree that at the time Enlow tendered his notice of retirement no new agreement had been reached and the parties were in a status quo situation pursuant to the above quoted statute. However, Crawford County seems to argue that because Enlow received additional pay, after he left Crawford County's employ and after the 1997–2001 agreement was reached, for the period of time he worked under the expired 1993–1997 contract salary terms, that Enlow is somehow estopped from relying on the provisions concerning retirement in the 1993–1997 agreement: "Mr. Enlow appears to desire the severance pay provisions of the former contract and the pay provisions of the subsequent contract." Appellant's Brief, p. 22.

Whether or not Crawford County paid Enlow the retroactive salary increase once the 1997–2001 agreement was reached, the fact remains that at the time Enlow tendered his notice of retirement and at the time he actually retired, the 1997–2001 agreement had not yet been reached. The import of this is clear: Enlow could not have relied on the 1997–2001 agreement when he retired because it was not yet in existence. Thus, we hold that the 1993–1997 contract governs the dispute in this case. *See, e.g., Indiana Educ. Employment Relations Bd. v. Mill Creek Classroom Teachers Assoc.*, 456 N.E.2d 709, 712 (Ind.1983).

██ We next address whether the 1993–1997 collective bargaining agreement entitles Enlow to severance pay. When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 717 (Ind.Ct. App.1999), *trans. denied.* This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument, giving the words contained therein their plain, usual, and ordinary meaning. *Id.* at 716. In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions. *Ostrander v. Board of Directors of Porter County Educ. Interlocal*, 650 N.E.2d 1192, 1196 (Ind.Ct.App.1995), *reh'g denied, trans. denied.*

██ Crawford County argues that Enlow is not entitled to severance pay because he did not give timely notification of his intention to retire. Article X of the 1993–1997 collective bargaining agreement pertains to severance pay and provides, in pertinent part, as follows:

A. Teachers shall notify the Superintendent of Schools of an intent to retire not later than sixty (60) days prior to retirement, provided said notification date may be waived in case of retirement due to disability.

Teachers who plan to retire at the end of the first (1st) semester shall notify the Superintendent of Schools in writing of an intent to retire not later than August 1 prior to said retirement. Teachers who plan to retire at the end of the second (2nd) semester shall notify the Superintendent of Schools in writing of an intent to retire not later than March 1 prior to said retirement. The notification date shall be waived in the case retirement is due to a disability. The notification date may be waived by the Superintendent in cases other than disability.

Record, p. 245. Here, Enlow gave written notification on August 19, 1997, of his intention to retire effective October 20, 1997. This meets the sixty day notification requirement set forth in the first paragraph of subsection A of Article X. Contrary to Crawford County's assertion, the second paragraph of subsection A requiring teachers to notify the superintendent by August 1 prior to said retirement is inapplicable because Enlow did not plan to retire at the

end of the first semester; he planned to retire on October 20, which was long before the first semester came to a close. Therefore, Enlow cannot be denied severance pay on the basis that he failed to give timely notice of his retirement.

 Crawford County further argues that Enlow is not entitled to severance pay under the collective bargaining agreement because "[h]e did not retire. He left ... for a better job as superintendent of the Orleans Community School Corporation." Appellant's Brief, p. 23. The agreement at issue does not define the terms "retire" or "retirement," a point which Crawford County concedes. Nevertheless, Crawford County contends that because members of the Indiana state teachers' retirement fund are not eligible for early retirement until they are at least fifty years of age, the same standard should be applicable in the present case. See Ind.Code § 5–10.2–4–1(c). Thus, according to Crawford County, Enlow is not entitled to severance pay benefits because he was only forty-eight years old when he indicated his intention to retire.

Enlow's eligibility to receive a pension from the Indiana state teachers' retirement fund is a separate issue from his eligibility to receive severance pay under the 1993–1997 collective bargaining agreement. Moreover, the evidence indicates that Crawford County paid severance benefits to thirty-two year old Jon Roberts when Roberts left Crawford County's employ to pursue studies in the ministry. Thus, Crawford County has paid severance benefits to at least one person who was under the age of fifty and thereby ineligible for payments from the Indiana state teachers' retirement fund.

In an apparent attempt to distinguish its severance payment to thirty-two year old Roberts, Crawford County argues that "no other teacher or administrator ... has ever received severance pay when leaving for a full-time teaching or administrative position at another school." Appellant's Brief, p. 24. However, we agree with the trial court that the 1993–1997 collective bargaining agreement has no provision limiting Enlow's options after retiring, nor does it impose any condition requiring abandonment of the education profession or termination of a career as a prerequisite to eligibility for severance pay. Therefore, we conclude that the 1993–1997 agreement entitles Enlow to severance pay upon his retirement from the school district. See, e.g., Ostrander, 650 N.E.2d at 1196.

## B.

 Crawford County next argues that it did not accept Enlow's "offer" of retirement and instead made a "counteroffer" that he resign without the payment of retirement benefits, which Enlow accepted by leaving its employ. However, the 1993–1997 collective bargaining agreement does not make an employee's right to receive retirement benefits contingent upon approval by Crawford County. Pursuant to the agreement, Crawford County may not reject retirement notifications so long as the notice requirements in subsection A of Article X, set forth in Part A supra, are met. Therefore, we reject Crawford County's argument on this point.

## C.

Crawford County next contends that Enlow's resignation was in violation of Ind. Code § 20–6.1–4–13. Crawford County asserts, and Enlow does not disagree, that Enlow was a permanent teacher with an indefinite contract and that any cancellation thereof by Enlow is governed by Ind. Code § 20–6.1–4–13, which provides:

> Sec. 13. Cancellation of Indefinite Contract by Teacher. (a) A permanent or semi-permanent teacher may not cancel his indefinite contract during the school term of the contract or for thirty (30) days before the beginning date of the school term unless the cancellation is mutually agreed on. A permanent or semi-permanent teacher may cancel his indefinite contract at any other time by

giving five (5) days' notice to the school corporation.

(b) A permanent or semi-permanent teacher who cancels his indefinite contract in any manner other than as provided in subsection (a) of this section is guilty of unprofessional conduct, for which the state superintendent may suspend the teacher's license for not more than one (1) year.

I.C. § 20–6.1–4–13. Here, there is no dispute that Enlow's resignation, dated August 19, 1997, was tendered less than thirty days before the beginning of the school term. Thus, according to Crawford County, "Enlow's resignation as he proposed it[ ] was in direct contradiction to the governing Indiana Code [and] .... [o]nly if Mr. Enlow accepted the School Board's condition in allowing his resignation without retirement benefits ... could Mr. Enlow be in compliance with the statute." Appellant's Brief, pp. 20–21. Enlow, on the other hand, contends that the statute in question is inapplicable because he did not cancel his contract; he retired as permitted in the collective bargaining agreement.

The term "cancel" is not defined in the statute. However, even assuming that Enlow's retirement constituted a cancellation of his contract within the meaning of Ind.Code § 20–6.1–4–13, we nevertheless conclude that the statute was not violated because the cancellation was mutually agreed on. When Crawford County's Board of Trustees met on October 13, 1997, it agreed to the termination of Enlow's employment effective October 20, 1997. Although the parties disagreed as to whether the termination was a retirement or a resignation with no entitlement to retirement benefits, the fact remains that Crawford County agreed that Enlow could leave its employ. Thus, no statutory violation occurred. See I.C. § 20–6.1–4–13.

## II.

The second issue is whether the trial court erred in awarding prejudgment interest to Enlow. The award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered. *Wedge v. Lipps Indus., Inc.*, 575 N.E.2d 332, 336 (Ind.Ct.App.1991). Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation. *Id.* Damages in the form of prejudgment interest are warranted in a contract case if the terms of the contract make the claim ascertainable and the amount of the claim rests upon mere computation. *J.S. Sweet Co., Inc. v. White County Bridge Comm'n*, 714 N.E.2d 219, 225 (Ind.Ct.App.1999). Such an award is proper where the trier of fact need not exercise its judgment to assess the amount of damages. *Id.* Thus, an award of prejudgment interest is generally not considered a matter of discretion. *Id.*

Here, Article X of the 1993–1997 collective bargaining agreement sets forth a complicated formula for calculating severance pay for employees who retire from the school district. Thus, the amount of Enlow's claim is ascertainable and rests upon mere computation. *See J.S. Sweet*, 714 N.E.2d at 225. Nevertheless, the agreement provides that "severance pay shall be paid to said teacher(s) in installment payments limited to Ten Thousand dollars ($10,000.00) per retiring teacher per year." Record, p. 246. Thus, if Crawford had paid Enlow the severance benefits to which he was entitled and no suit had been filed, Enlow would have only received $20,000 of the $55,473.05 due him by the time the trial court entered its order on October 1, 1999.[1] Therefore, in order for Enlow to be fully compensated for his loss, he is entitled to prejudgment

---

1. $10,000 in 1997 and $10,000 in 1998. The $10,000 payment for 1999 would not have

been due until at least October 21, 1999, the day after the anniversary of his retirement.

interest on $20,000, not the full $55,473.05. *See, e.g., Wedge,* 575 N.E.2d at 336. Moreover, because the payments were due in installments, we conclude that the prejudgment interest, rather than running from October 21, 1997, to the date of the entry of judgment as ordered by the trial court, should also begin in installments. *See, e.g., Reilly v. Barrera,* 620 So.2d 1116, 1118 (Fla.Dist.Ct.App.1993) (noting that a creditor who sues for delinquent installments instead of accelerating the entire debt is entitled to prejudgment interest from the date of the individual defaults). Thus, the prejudgment interest on the first $10,000 due should be calculated from October 21, 1997, to the date of the entry of judgment and prejudgment interest on the second $10,000 due should be calculated from October 21, 1998, to the date of the entry of judgment.

### III.

The third issue is whether the trial court erred in ordering Crawford County to pay insurance premiums on behalf of Enlow. Article X of the 1993–1997 collective bargaining agreement provides as follows:

E. It is understood and agreed to that teachers retiring from the school corporation for any reason, including disability, shall be allowed to stay in the school corporation's insurance programs until age 65 with the school corporation paying one thousand eight hundred dollars ($1800.00) per year per teacher toward the premium cost of said insurance.

A teacher retiring from the Crawford County Community School Corporation shall be eligible to remain on the group health and life plans provided there is no lapse in coverage. (A retiree may not re-enroll at a later date if coverage is terminated.)

The School Corporation shall pay $1,800.00 towards the yearly cost of the health plan. The School Corporation will pay the 1st $1,800.00, and the retiree shall pay the balance and cost of all other premiums for the year for the plan. . . .

\* \* \* \* \*

A retiree's intention to remain on the group health and life plans must be stated in his/her letter of retirement to the School Board. Failure to do so will terminate the retiree's right to renew the health and life plans.

Record, pp. 246–247. In his notice of retirement, Enlow stated that he "wish[ed] to remain on the group life insurance plan" and that he wanted his "group health insurance plan [to] be transferred into Marilyn Enlow's name." Record, p. 514.

In its three sentence argument on this point, Crawford County asserts that the trial court erred in ordering it to pay insurance premiums on behalf of Enlow because Enlow indicated that he did not want health insurance. However, a reading of Enlow's notice of retirement clearly indicates that he wanted the health insurance: but he wanted it transferred into Marilyn Enlow's name. Therefore, the issue is whether a retiree's health insurance may be transferred into another person's name. The 1993–1997 agreement is silent on this issue. The terms of the insurance policy or policies are not before us. Therefore, we conclude that there is a genuine issue of material fact as to whether Crawford County is required to pay Enlow's health insurance premiums. *See, e.g., Wabash Grain,* 713 N.E.2d at 325.

For the foregoing reasons, we affirm the trial court's award of $55,473.05 in severance pay, reverse in part on the issue of prejudgment interest, and reverse on the issue of the payment of Enlow's health insurance premiums, and remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAKER, J. and ROBB, J. concur.