**BROWNSBURG MUNICIPAL BUILDING CORPORATION,**
**Appellant–Defendant,**

v.

**R.L. TURNER CORPORATION,** St. Paul Fire and Marine Insurance Company, Appellees–Plaintiffs, Third–Party Defendants.

No. 32A01–1002–PL–37.

Court of Appeals of Indiana.

Sept. 16, 2010.

Sydney L. Steele, Kevin D. Koons, Indianapolis, IN, Attorneys for Appellant.

Michael L. Einterz, Michael L. Einterz, Jr., Zachary J. Eichel, Zionsville, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Senior Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Brownsburg Municipal Building Corporation ("Brownsburg") appeals the trial court's denial of its motion for partial summary judgment in a suit filed by Plaintiffs–Appellees R.L. Turner Corporation ("Turner") and St. Paul Fire and Marine Insurance Company. We affirm.

### ISSUES

Brownsburg raises two issues for our review, which we restate as:

I. Whether the trial court erred in denying partial summary judgment when a section of the contract between Brownsburg and Turner provides that the Architect's decisions are "final and binding on the parties."

II. Whether the trial court erred in denying partial summary judgment as it pertained to the issue of consequential damages.

### FACTS AND PROCEDURAL HISTORY

On March 17, 2005, Brownsburg and Turner entered into a contract for the construction of a new town hall, police station complex, and maintenance garage. Under the contract, Brownsburg is the "Owner," Turner is the "Contractor," and the firm of Burgess & Niple is the "Project Architect" ("Architect").

The contract, which is a modified version of the standard contract approved by the American Institute of Architects' (AIA), contains the following critical provisions:

4.3.10. Claims for Consequential Damages. The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:

\* \* \*

2. damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work. . . .

4.4.1. Decision of Architect. Claims, including those alleging an error or omission by the Architect . . . shall be referred initially to the Architect for decision. An initial decision by the Architect shall be required as a condition precedent to litigation of all Claims between the Contractor and Owner arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Architect with no deci-

sion having been rendered by the Architect. The Architect will not decide disputes between the Contractor and persons or entities other than the Owner.

    4.4.5. The Architect will approve or reject Claims by written decision, which shall state the reasons therefor and which shall notify the parties of any change in the Contract Sum or Contract Time or both. The approval or rejection of a Claim by the Architect shall be final and binding on the parties.

(Appellant's App. at 255–56).

During the construction process, Turner raised a number of claims. The claims were not resolved or decided by the Architect within thirty days of the filing thereof, and Turner filed suit on August 21, 2007 (amended on October 19, 2008), alleging that it was entitled to damages for breach of contract and under the theory of quantum meruit. After the filing of the initial complaint, the Architect denied the claims, a fact that was revealed to Turner in discovery.

Brownsburg filed a motion for partial summary judgment alleging that under Section 4.4.5 of the contract, the Architect's post-complaint rejection of the claims was final and the trial court was precluded from deciding the claim. The motion also alleged that certain claims were waived because they were claims for consequential damages. Turner responded that the contract allows for litigation when the Architect fails to timely respond to claims and that there were no claims waived by the contract language pertaining to consequential damages. The trial court denied Brownsburg's motion, and we accepted jurisdiction of this interlocutory appeal.

## DISCUSSION AND DECISION

### I. CONTRACT PROVISIONS REFERRING TO THE ARCHITECT'S AUTHORITY

█ When reviewing a grant of summary judgment, our standard of review is the same as the trial court. *Dreaded, Inc. v. St. Paul Guardian Insurance Co.,* 904 N.E.2d 1267, 1269 (Ind.2009). Considering only those facts that the parties designated to the trial court, we must determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Id.;* Indiana Trial Rule 56(C). In answering these questions, we construe all factual inferences in the non-movant's favor and resolve all doubts as to the existence of a material issue against the movant. *Id.* at 1270.

█ The goal of contract interpretation is to ascertain and give effect to the parties' intent. *Peoples Bank & Trust Co. v. Price,* 714 N.E.2d 712, 717 (Ind.Ct.App. 1999). In interpreting a contract, a court is to read the contract as a whole and construe the language so as not to render any words, phrases, or terms ineffective or meaningless. *Id.* When the language of the contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument, giving the text its plain, usual, and ordinary meaning. *Id.*

█ When a contract is ambiguous, a court may look to extrinsic evidence to determine the parties' intent. *Id.* at 716. A contract is not ambiguous simply because a controversy exists between the parties concerning the interpretation of its terms. *Ostrander v. Board of Directors of Porter County Education Interlocal,* 650 N.E.2d 1192, 1196 (Ind.Ct.App.1995). A contract is ambiguous, however, where reasonable persons would arrive at differ-

ing conclusions as to its meaning. *Smith v. Allstate Insurance Co.,* 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We review questions of law *de novo* and give no deference to the trial court. *Indiana–American Water Co. v. Town of Seelyville,* 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998).

Brownsburg contends that the trial court erred in denying its motion for partial summary judgment because the contract unambiguously gives the Architect the authority to make decisions on claims. Brownsburg points to Section 4.4.5 and argues that it unequivocally expresses the intention of the parties that the Architect should be the final arbiter of the parties' claims. Brownsburg cites *Barnes Construction Co. v. Washington Township of Starke County,* 134 Ind.App. 461, 184 N.E.2d 763, 764 (1962) (holding it is an Indiana rule of law that where a contract provides that work shall be done to the satisfaction, approval, or acceptance of an architect or engineer, "he is thereby constituted a sole arbitrator by the parties, who are bound by his decision in the absence of fraud or such gross mistake to imply bad faith or a failure to exercise honest judgment"); *Lake Michigan Water Co. v. U.S. Fidelity & Guaranty Co.,* 70 Ind.App. 537, 123 N.E. 703, 705 (1919) (holding that a provision in a building contract by which an architect or engineer becomes the arbitrator, "is, if anything, more binding than an ordinary submission to arbitration, for the reason that it becomes a part of the consideration of the contract"); and related cases in support of its contention, and it further contends that the reference to "litigation" in Section 4.4.1 must be interpreted to pertain only to suits for fraud or bad faith.

On the other hand, Turner contends that the trial court's denial was proper because Section 4.4.1 unambiguously placed a limitation on the Architect's authority expressed in Section 4.4.5. Turner notes that under Section 4.4.1, it may proceed to "litigation of all claims between the Contractor and Owner" if "30 days have passed after the Claim has been referred to the Architect with no decision having been rendered by the Architect."

We agree with Brownsburg that the contract is unambiguous. However, we conclude that Brownsburg's interpretation of the contract fails to give meaning to the limitations on the Architect's authority set forth in Section 4.4.1. Section 4.4.1, under the general heading of "Resolution of Claims and Disputes," specifically refers to the "Decision of the Architect." (Appellant's App. at 255). It then provides that "claims shall be referred initially to the Architect for decision" and that the initial decision is a condition precedent to litigation unless no decision on the claim has been made within thirty days of its referral. *Id.* at 255–56. If we were to interpret Section 4.4.1 in the manner urged by Brownsburg, we would be saying that the Section authorizes Turner to file suit for the Architect's fraud or bad faith in rendering a determination before the determination is actually made. Brownsburg's reading would also require us to say that the contract allows litigation to be commenced even though a belated Architect's decision could preclude a judicial determination of the merits of the claim. These are not reasonable readings of the Section.

Instead, we conclude that when Sections 4.4.1 and 4.4.5 are read together, they give the Architect final and binding authority for a period of thirty days after a claim has been made. If the Architect fails to make a timely decision, and the Contractor or Owner files suit before a decision is made, the Architect's post-complaint decision is neither final nor binding. Furthermore, we observe that the cases cited by Brownsburg are inapposite, as they do not

 

involve a provision of limitation such as Section 4.4.1.

In addition to the impact of the contract language on this case, the parties disagree about the timeliness of Turner's claims and the Architect's decision. The parties contend that the designated evidence supports their claims. Our review discloses that there is a genuine issue of material fact as whether Turner and/or the Architect timely complied with the provisions of the contract. In short, the trial court did not err in determining that a grant of partial summary judgment was improper.

## II. CONSEQUENTIAL DAMAGES

■ Brownsburg contends that the trial court erred in not granting partial summary judgment on its claims that Turner was seeking to recover consequential damages. As noted above, the contract between the parties states that the parties waive claims of consequential damages "arising out of or relating to this Contract." (Appellant's App. at 255).

Turner does not dispute the waiver of consequential damages, but maintains that the claimed damages are direct, not consequential. In its amended complaint, Turner's claim included damages attributable to delays allegedly caused by Brownsburg for winter protection costs, lost efficiency and de-mucking of the site, drying out and excavation of the deteriorated site, overhead costs, and opportunities lost.

It appears that some of these damage claims, especially the overhead costs and opportunities lost, may be waived as consequential damages under the contract. However, our review of the record indicates that this issue turns upon specific material facts. Under these circum-

stances, we cannot say that the trial court erred in denying the motion for partial summary judgment.[1]

### CONCLUSION

The trial court did not err in denying Brownsburg's motion for partial summary judgment. Accordingly, we affirm the judgment.

Affirmed.

NAJAM, J., and BRADFORD, J., concur.

---

1. The parties disagree on the definition of "foreseeable" damages. The issue should resolve itself when the trier of fact is presented with specific evidence to support or oppose the damage claims.